C87QimmC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  IIMMIGRATION JUSTICE CLINIC

4              Plaintiff

5        v.                          12 CV 1874 (GBD)

6  UNITED STATES DEPARTMENT OF
   STATE
7
               Defendant
8
   ------------------------------x
9                                    New York, N.Y.
                                     August 7 2012
10                                   11:00 a.m.

11  Before:

12              HON. GEORGE B. DANIELS

13                                   District Judge

14                    APPEARANCES

15  CARDOZO SCHOOL OF LAW
        Attorney for Plaintiff
16  BETSY GINSBERG

17  UNITED STATES DEPARTMENT OF JUSTICE
    UNITED STATES ATTORNEY'S OFFICE
18  SOUTHERN DISTRICT OF NEW YORK
        Attorney for Defendant U.S. Dept. of State
19  PATRICIA L. BUCHANAN

20

21

22

23

24

25

1              (In open court)

2              THE DEPUTY CLERK:  Immigration Justice Clinic of the

3      Benjamin Cardozo School of Law v. U.S. Department of State.

4      Docket No. 12CV1874.

5              Please stand and state your name for the record

6      beginning with the plaintiff.

7              MS. GINSBERG:  Betsy Ginsberg for Cardozo Law School.

8              THE COURT:  Good morning, Ms. Ginsberg.

9              MS. GINSBERG:  Good morning, your Honor.

10             MS. BUCHANAN:  Good morning, your Honor.  Patricia

11     Buchanan for the Department of Justice.

12             THE COURT:  Good morning, Ms. Buchanan.

13             Ms. Ginsberg, where are you students?

14             MS. GINSBERG:  It's the summertime, Judge.

15             THE COURT:  That's the first thing you teach them, you

16     still work in the summer.

17             MS. GINSBERG:  Well, we've got one here in the back.

18             THE COURT:  Let her come up and sit at the table.

19             MS. GINSBERG:  Thank you, your Honor.

20             She is not practicing under a practice order, but...

21             THE COURT:  Sure.

22             Ms. Ginsberg, I need to see the document.  It's hard

23     for me to figure out -- in camera I'll review it and figure

24     out -- I understand your argument.  I'm not sure I can accept

25     the argument that simply because it's in a certain file that

1    that means it's exempt.  I think the statute really does say

2    the documents are exempt, not that you get protection because

3    you've shove everything that's not exempt into a certain file.

4         You say it's not segregatable, but I just don't have a

5    concept of what you're talking about.  Quite frankly, it all

6    seems to me much ado about nothing because it seems to me your

7    first response is that doesn't have any information that

8    they're looking for.

9         If they are looking for something that is relevant to

10   a conclusion that the plaintiff -- I mean, the individual is

11   lawfully in the United States.  So I'm not quite sure -- I

12   guess -- I'm sorry, I said Ms. Ginsberg; I meant Ms. Buchanan.

13        Ms. Ginsberg, let me start with you.  What is it

14   you're looking for?  What document?  What is it in there that

15   you think is responsive to your request?

16        MS. GINSBERG:  Well, your Honor, our client is

17   severely mentally ill and has a severe cognitive impairment.

18   So the psychologist and the several psychiatrists who've

19   examined her have said she can't give her biographical history.

20   She can't tell us any reliable information.  So, we are looking

21   for information about her and her immigration that will support

22   her claim that she is here lawfully.

23        THE COURT:  So it doesn't sound to me that any way

24   they describe this document that that's what this document is.

25        MS. GINSBERG:  Excuse me, your Honor.  They say that

1     it contains biographical data.  So to the extent that it

2     contains biographical data that we don't already have or know

3     about her or that it conflicts with other biographical data

4     that we do have, it may be useful to us.  It may not be, but we

5     can't know that without seeing the document.

6              THE COURT:  When you say biographical data, what is it

7     that you don't know that you're looking for?  I'm not sure.

8              MS. GINSBERG:  Where she was born.

9              THE COURT:  OK.

10             MS. GINSBERG:  When she came into this country; other

11    information about her history that may or may not be included

12    in that document; statements that she may have made while she's

13    here.

14             THE COURT:  Statements about?

15             MS. GINSBERG:  Her immigration.

16             THE COURT:  At issue I assume is the sole issue of

17    whether or not she was legally admitted into the United States.

18             MS. GINSBERG:  That is primarily the issue, although

19    there are other factors that go into determining whether

20    someone can stay here in this country whether or not they were

21    admitted lawfully.  So we would like to know as much as we can

22    to assist her in determining whether there's a way for her to

23    lawfully stay in the country if in fact she isn't already

24    lawfully in this country which we don't know.

25             THE COURT:  All right.

1        MS. GINSBERG:  Your Honor, under FOIA, none of -- the

2   relevance of the document to our immigration court case doesn't

3   matter.  In fact, the immigration court case is no longer

4   ongoing.  However, her status is still up in the air.  What

5   matters is the FOIA statute that requires the government to

6   turn over documents and --

7        THE COURT:  What matters is what the nature of your

8   requests were.  That's what I'm trying to get at.  The nature

9   of your request, I thought, was very specific about the type of

10  document that you were looking for.

11       MS. GINSBERG:  Our request was quite broad in that it

12  relates to anything concerning her immigration, and her history

13  coming into this country.  So it is not simply about visa

14  information in particular.  It's about any information that

15  they have about her.

16       THE COURT:  What information would they have about her

17  with regard to her admission into the United States other than

18  her visa information?

19       MS. GINSBERG:  If she didn't apply for a visa, which

20  the state department says that she did not, she came into this

21  country -- either she was naturally born here or she came into

22  this country from another country in some way, and they may

23  have information about that.  They may have information about

24  what she said about how she arrived in this country.

25       THE COURT:  But the nature of the representations I

1    thought were that none of that information is on this document.

2               MS. GINSBERG:  The representations made by the state

3    department is that none of the information in this document

4    pertains to an application for a visa by this particular

5    person.  It doesn't say anything about anything else other than

6    how it relates to an application for a visa.

7               THE COURT:  Well, I thought it was a little broader

8    than that.  I thought she -- I guess it was Ms. Walters?

9               MS. GINSBERG:  Yes.

10              THE COURT:  I thought she had an affidavit basically

11   saying that there wasn't any information with regard to her

12   entrance into the United States, but maybe I'm incorrect.

13              MS. GINSBERG:  I would have to look at that document

14   again.  The state department does not contest that this

15   document falls within our request.  The only reason that

16   they've created this Vaughn index about this document is

17   because it's responsive to our request.  They've already

18   admitted that it's responsive.  The only question is whether

19   it's exempt, and our argument is that it cannot be exempt.

20              THE COURT:  Let me ask Ms. Buchanan, I guess my first

21   question is, Ms. Buchanan, in what way is it responsive to the

22   request if it doesn't have the information she's asking for?

23              MS. BUCHANAN:  That's a good question, your Honor.  We

24   might refine it a bit and say it was responsive to the search,

25   but it is not truly responsive to the request.  Because it

1    turned up in the search, we've identified it.  But plaintiff

2    has somewhat of an inconsistent position because she provided

3    the name and date of birth for which she wanted a search

4    conducted country of citizenship, so a search was conducted

5    using that biographical data, and a record was discovered, but

6    it's not responsive to the request pertaining to whether there

7    is a lawful entry and whether there was an alien number

8    assigned and so on.  So, really it's more of a nuanced

9    response, but in the abundance of caution in disclosure we

10   identified it as responsive, but, again, it's not fully

11   responsive, and we tried to provide sufficient information in

12   the Vaughn to assist the plaintiff in determining that the

13   records of the department of state database were really not

14   responsive or helpful to the request.

15          May I take a few minutes to respond to a few other

16   points your Honor raised?

17          THE COURT:  Sure.

18          MS. BUCHANAN:  I think just very broadly, your Honor,

19   to the extent the Court requested the government provide the

20   documents for in camera review.

21          THE COURT:  I thought you offered to provide the

22   documents.

23          MS. BUCHANAN:  Well, we are prepared to do that.  I

24   have them here today and I can certainly provide them up.  But,

25   to be clear, our position is this is not a specific document

1    assessment review.  It is our position that these documents are

2    categorically covered by the confidentiality statute at issue

3    here, so it is not relevant what the content --

4            THE COURT:  But none of the cases that you cite stand

5    for that broader proposition that simply because it's in a

6    particular designated file, that that's the only inquiry that's

7    supposed to be made.  Isn't there supposed to be an individual

8    inquiry as to the document that you want to withhold?

9            I mean, simply because you put a driver's license in

10   the file, that doesn't necessarily make it the category of

11   document that is exempt, does it?  You say that everything you

12   dump in this file, whether it should or shouldn't be in this

13   file, regardless of who made the determination and regardless

14   of the subject matter, that that makes it exempt because you

15   put it in the file?

16           MS. BUCHANAN:  Respectfully, yes, because --

17           THE COURT:  What case is that?

18           MS. BUCHANAN:  Well, it's the declaration.

19           THE COURT:  Well, the declaration doesn't say that.

20   As a matter of fact, the declaration says, and you've conceded,

21   that this is not the only purpose of this file; that visa

22   applications aren't the only purpose of this file.  Now you've

23   divided it into, well, there's a visa application part of the

24   file and there's another aspect of the file; but simply being

25   in this file doesn't give it the protection that you're

1    arguing.  If that were the case, you wouldn't have done a

2    search for that file.

3              MS. BUCHANAN:  No, but -- respectfully, no, your

4    Honor, we're required to do a search of the confidential

5    records, and the position is because the document is in a

6    database pertaining to visa issuance and refusals --

7              THE COURT:  But I don't know of any case that says

8    that.  Is there any case that says because the document itself

9    is in a file that's used, that makes the individual document

10   necessarily falling into a certain category?  The category

11   talks about an assessment of the individual document, isn't

12   that what the exemption deals with?

13             MS. BUCHANAN:  No --

14             THE COURT:  Everybody who's discussed exemption says

15   you have to look at the document and see if the document is

16   exempt, right?

17             MS. BUCHANAN:  With respect, no.  Exemption three is a

18   different inquiry and analysis than you have with some of the

19   other exemptions.

20             THE COURT:  OK.

21             MS. BUCHANAN:  Exemption three directs the Court to

22   the specific statute.

23             THE COURT:  Right.

24             MS. BUCHANAN:  In this case, it's 1202 --

25             THE COURT:  But that statute doesn't say anything

1    about being in a file that gives it exempt status, does it?

2              MS. BUCHANAN:  It says a record pertaining to the

3    issuance or refusals of visas.

4              THE COURT:  Right.

5              MS. BUCHANAN:  This record was obtained from a

6    database that is used for the issuance and refusal of visas.

7              THE COURT:  But I didn't hear you articulate in what

8    way this record pertains to an assessment of a visa other than

9    it's in a file that they might look at if they were going to

10   check the visa.  That doesn't necessarily mean --

11             MS. BUCHANAN:  The fact that it's in the file or in

12   the database --

13             THE COURT:  Suppose it's misfiled?

14             MS. BUCHANAN:  Excuse me?

15             THE COURT:  Suppose it's misfiled?  Suppose your

16   review of this document was to say to me, Judge, this document

17   has absolutely nothing to do with visa application.  Would you

18   say it's still exempt because it's in the file?

19             MS. BUCHANAN:  Your Honor, yes, there's a presumption

20   that if it's in the database, it's --

21             THE COURT:  Well, it's not an irrebuttable presumption

22   if the document --

23             MS. BUCHANAN:  Well, the department of state maintains

24   a database, and they put information in that database that is

25   used for issuance and refusal of visas.

THE COURT: Some information is used. Some information is irrelevant. Right?

MS. BUCHANAN: Respectfully, no. If it's in there, it's something that's considered. So, if a person is going to apply for a visa, they're going to look in that database to make a determination on that visa. So the database is used for the determination.

THE COURT: And your argument is even a little further than that. You're saying that none of this information -- well, I won't say none of it. The document that is in issue was never used for visa evaluation. You're not arguing that it did relate to some visa assessment. You're saying because it's in the file, some day in the future it might be reviewed for a visa application, so, therefore, that makes it exempt.

That's a little bit more of a step than what I think Congress was concentrating on when they said if the document pertains to the visa application, then you don't have to turn over the document. What they intended primarily was that if you're assessing someone's visa application and they accumulate documents that are relevant to that, that pertain to that application, that they don't have to disclose all the things that they reviewed in making their assessment. That's what primarily it deals with.

I've never seen a published case or knew of an instance where the government has simply argued: It's in the

1    database, it's never been used to review a visa application,

2    but because it's in the database, sometime in the future, which

3    we don't anticipate at this point, it might be used in a visa

4    application because it's in the file.  So, therefore, even

5    though the document has absolutely nothing to do with an

6    assessment of someone's visa, specifically it's exempt.

7            Is there a case that says that?

8            MS. BUCHANAN:  Respectfully, your Honor, I refocused

9    the analysis, if I may.  You know, the focus is really on the

10   statute that the department of state administers and how they

11   create their records and what their understanding of the use is

12   and how they use it.

13           If I could direct the Court to a case -- and I really

14   raise this in response to plaintiff's reply brief regarding the

15   scope of the Court's review -- plaintiff argues that the FOIA

16   should be construed broadly in favor of release.  I'm hearing a

17   little bit of that view from the Court --

18           THE COURT:  That's not my view.  I think it should be

19   interpreted consistent with the language of the statute and

20   Congress's intent.

21           MS. BUCHANAN:  I think with respect to interpreting

22   the precise statute at issue here, it's a statute that the

23   department of state uses and implements.  So, specifically, I

24   just want to direct the Court to a case of the *Church of*

25   *Scientology of California v. Internal Revenue Service*; it's at

1    792 F.2d 153.  That's from the D.C. Circuit 1986.  The jump

2    cite is 167.  It's an en banc decision from the circuit court,

3    and there's a concurring opinion that specifically addresses

4    exemption three, and that in the interpretation of how that

5    statute should be construed, the Court should defer to the

6    administrative agency under a general Chevron deference because

7    they're the agency that administers that statute.

8              THE COURT:  Defer on what issue?

9              MS. BUCHANAN:  On interpreting -- what standard of

10   review the Court uses to interpret the statute at issue.

11             THE COURT:  I'm not sure I understand what is in

12   dispute about the standard of review.  What do you claim the

13   standard of review is?

14             MS. BUCHANAN:  That the department of state should be

15   given deference in how they interpret the 1202(f) and with

16   respect to visa information in that database.

17             THE COURT:  So where is it that they've given some

18   different interpretation in the application --

19             MS. BUCHANAN:  Well, the interpretation that is

20   described here; that is, if information is put in that database

21   for the purpose of using it for determining visa eligibility,

22   then it's covered by the statute and the confidentiality

23   provisions in that statute.

24             THE COURT:  I don't have anything in this affidavit

25   that says it was put in that file for the purpose of assessing

1    a visa application.  There was no visa application.

2              MS. BUCHANAN:  It says it's in there for the use of

3    visa determinations.

4              THE COURT:  They didn't do a visa determination nor is

5    there any -- that's a factual question.  Why do I assume that

6    that's why it was put in there?

7              MS. BUCHANAN:  That's the purpose of that database.

8    That's what the declaration says.

9              THE COURT:  I know, but that doesn't tell me why a

10   particular document went into that database.

11             MS. BUCHANAN:  Yes, it went into the database because

12   the purpose of that database is to collect information --

13             THE COURT:  How do we know?

14             MS. BUCHANAN:  Because that's what the declaration

15   says.

16             THE COURT:  Well, the declaration doesn't tell me

17   anything about the circumstances of putting this document into

18   the database.

19             MS. BUCHANAN:  Well, the purpose of the database is to

20   use it to determine visa eligibility.

21             THE COURT:  There are multiple purposes of a database.

22             MS. BUCHANAN:  No, the visa component from which this

23   document was retrieved --

24             THE COURT:  Right.

25             MS. BUCHANAN:  -- is used for visa eligibility

1    determinations.

2              THE COURT:  All right.

3              MS. BUCHANAN:  So they wouldn't put information in

4    there if it wasn't relevant to visa --

5              THE COURT:  Well, they shouldn't put information in

6    there if it's not relevant.  To say they wouldn't, neither one

7    of us can say that.

8              MS. BUCHANAN:  That's where it goes back to deference

9    to the agency, if they're creating a database and they know

10   what their use is for it.

11             THE COURT:  But that's not the deference to the agency

12   I'm supposed to give.  That's not what the Second Circuit says.

13   The Second Circuit says I'm supposed to give them deference on

14   their interpretation of the statute.  It doesn't say I'm

15   supposed to give them deference as to every individual document

16   they want to toss in the file.  That's not what it says.

17             MS. BUCHANAN:  The statute provides that the records

18   that are in there with respect to records that pertain to

19   visa --

20             THE COURT:  No, it says that those are records that

21   are supposed to go in there.  Right?

22             MS. BUCHANAN:  Right.  And you can assume that if it's

23   in there, it's put in there because it pertains to visa

24   adjudications.  They're administering the statute.  There's

25   certainly a presumption --

1    THE COURT:  Well, I think the first thing is that --

2    and then I have an indication that the information isn't

3    segregatable, which is also part of the analysis you asked me

4    to rely upon, that nothing in this document is responsive and

5    can be produced in that manner.  But I don't have any concept

6    of what you mean by why it's not segregatable.  One section has

7    a date of birth, and another section has information about why

8    if she applies for a visa, it should be denied.  I'm not sure

9    why you argued that that's not segregatable in the abstract as

10   to everything on the document.  I find it hard to accept that

11   nothing is segregatable on the document simply by a blanket

12   statement to that effect without seeing the document.  Is your

13   position that absolutely nothing on this document can be

14   segregatable because of what?  Simply because you want the

15   blanket protection or because you really say it's not

16   segregatable.

17        MS. BUCHANAN:  It's primarily because there is a

18   blanket confidentiality --

19        THE COURT:  That doesn't tell me it's not

20   segregatable.

21        MS. BUCHANAN:  In any event, your Honor, the

22   information is collected -- it has to do with the way the

23   information is collected and assembled that makes it

24   non-segregatable.

25        THE COURT:  I accept that, but I have no idea what

1    you're talking about.  I cannot even -- I don't have an image

2    of what you mean by that.  You tell me it's a three-page

3    document, and I've redacted plenty of documents in my time, and

4    I've never heard anyone just giving a blanket "nothing is

5    segregatable."  I assume her name is segregatable.  Her name is

6    on the document.  You can do that, right?  Her name is

7    segregatable.

8              MS. BUCHANAN:  Your Honor, it has to do with the

9    nature of the document.  It's not a question of blocking out a

10   particular line or a digit or a few letters.

11             THE COURT:  That's what I don't understand.

12             MS. BUCHANAN:  It has to do with the nature of the

13   information, how it relates to the documents.

14             THE COURT:  If you did a search based on her name and

15   date of birth, tell me how her name and date of birth on the

16   document is not segregatable to be produced.

17             MS. BUCHANAN:  Again, it goes to the nature of the

18   document and why it's put in the database and how it's used

19   once it's in the database.  So the fact that -- I mean, we have

20   noted that the document was identified as responsive to the

21   search terms, but going through a document that's in the

22   confidential database and extracting pieces of information is

23   not segregability.  It is just not the method here --

24             THE COURT:  Well, is my reaction fairly correct that

25   this has very little, if anything, to do with the information

C87QimmC

1    on the document?  It has more to do with your consistent

2    position that simply because it's in the file, it shouldn't be

3    produced.  You have made no determination that it is in any way

4    responsive to the kind of information that she is asking for

5    other than it was retrieved because you did a search of the

6    name and date of birth.

7              MS. BUCHANAN:  It's closer to that, your Honor.

8              THE COURT:  That's what I assume.  I was going to say

9    much ado about nothing, as they say.  You just don't want to

10   set the precedent of giving up a document out of this file.  Is

11   that basically it?

12             MS. BUCHANAN:  I'm sorry, your Honor?

13             THE COURT:  You just don't want to set a precedent of

14   giving up a document out of this file and losing the argument

15   that because it's in the file itself, it is a document blanket

16   protection under the statute to not be produced because it

17   could be used, it's in a visa database?

18             MS. BUCHANAN:  The principle of the confidentiality of

19   the records is very important.

20             THE COURT:  Is there anything else that's important

21   other than the principle?  I'm just trying to figure out.

22             MS. BUCHANAN:  Well, your Honor, I mean, it's

23   principle as applied to this case and this FOIA request, and we

24   do respectfully believe it's being properly applied.

25             THE COURT:  You're saying you've never produce, the

1  agency, the state department has never produced a document out

2  of this file pursuant to a FOIA?

3          MS. BUCHANAN:  I would say based on my information,

4  absent a court order or some unknown inadvertent release, which

5  is theoretically always possible, but otherwise, no, that this

6  is a consistent and very important principle for the department

7  of state, and we believe it's covered by the statute.

8          THE COURT:  Can I see the document?

9          MS. BUCHANAN:  Yes.

10          MS. GINSBERG:  Your Honor, may I have a moment?

11          THE COURT:  Yes.

12          MS. GINSBERG:  On the question of the responsiveness

13  of this document to our request, this is the first time that

14  defendants are even making any mention that it may not actually

15  be responsive to their request, and that it's instead

16  responsive to the search that they performed.

17          THE COURT:  I sort of got that impression when I read

18  the papers that they didn't particularly -- if your request was

19  a search, as they say, a search for documents, that would help

20  establish how she got into the country.

21          MS. GINSBERG:  That wasn't our request.  That wasn't

22  the entirety of our request.  In paragraph 27 of the Walters'

23  declaration, they say:  These records are responsive to

24  plaintiff's FOIA request.

25          In our FOIA request, among other things, we request

C87QimmC

1    everything that they have with the A number, the alien number,

2    that the government assigned to our client.

3           So, to the extent that this document has her alien

4    number or one of the alien numbers that's assigned to her, and

5    it does, it's responsive to the actual request that we made.

6           On this question of -- I was going to move on from the

7    responsiveness.

8           THE COURT:  Go ahead.

9           MS. GINSBERG:  On the question of exemption 3 being

10   different, it's not different in terms of the analysis, as I

11   think your Honor picked up.  There is still a requirement to be

12   an individual assessment of each document, no matter where the

13   document comes from.

14          The document at issue here they have specifically

15   said, in the Walters' declaration, does not pertain to a visa.

16   There is no case that says that if there is a document -- all

17   of the cases about this are documents that pertain to actual

18   visa applications; not hypothetical, possible visa

19   applications, but actual visa applications or refusals.  Their

20   position here, the state department's position here, that

21   documents that may be used in the future to adjudicate some

22   hypothetical possible visa, that all of those documents are

23   exempt under FOIA, that position is essentially the same as

24   saying every document that we have that relates to an immigrant

25   is exempt from FOIA.  That position is untenable.

1    Under FOIA, it doesn't meet the individual assessment

2    requirement, and it prevents immigrants from getting

3    information that the state department may have.  The state

4    department has turned over documents that pertain to visas as

5    long as they don't pertain to the issuance of a visa, the

6    application and issuance of a visa, or the refusal of a visa.

7    So, there are cases where district court judges look at the

8    statute, and they say, well, this has nothing to do with

9    waivers and this has nothing to do with revocations of visas,

10   so we're going to look at the language of the statute which

11   says the only things exempt are documents pertaining to the

12   issuance or refusal of actual, not hypothetical, but actual

13   visas.  And this document does not pertain to any visa.  They

14   say there is no visa and that it doesn't pertain to the visa.

15   It's responsive to plaintiff's FOIA request, and, therefore,

16   should be turned over.

17        THE COURT:  Give me a little bit of the history as you

18   have it as regard to the client.  You have been representing

19   her attempting to do what?  Give me what you know about her

20   history, because she was in lockup from when?

21        MS. GINSBERG:  So I will give you what I can about the

22   case.  Obviously, there are things that are confidential.

23        THE COURT:  Whatever you want to give me.

24        MS. GINSBERG:  Right.  At the filing of this

25   litigation, the immigration judge had terminated proceedings

1  against our client finding that the government couldn't meet

2  their burden to establish her alienage.

3  THE COURT:  When was that?

4  MS. GINSBERG:  That was in, I believe, May of 2011.

5  THE COURT:  OK.

6  MS. GINSBERG:  After that, the government appealed

7  that termination.  That appeal was pending at the time that

8  this FOIA litigation was filed.

9  Subsequently, the board of immigration appeals upheld

10 that termination by the immigration judge, saying, yes, the

11 government couldn't meet its burden; this case should be

12 terminated.  But that termination is without prejudice to the

13 government, which means that at any point in time, they could

14 reinitiate proceedings against this person.  So, she is sort of

15 out there with an unknown status.

16 THE COURT:  Are there any proceedings currently?

17 MS. GINSBERG:  There are no current proceedings

18 against her, and her mental health and cognitive impairment are

19 in the same place, as far as I know, that they have been

20 throughout the proceedings.

21 But, again, this is really about whether this document

22 can be exempt.  They've admitted that it's responsive.  Whether

23 it is necessary to any other satellite proceedings, related

24 proceedings isn't the question before the Court.  It's simply

25 whether their claim of exemption is proper.

1    Just quickly on the point of deference, which this is

2  the first I'm hearing of it, I don't see how Chevron deference

3  come into play here.  There's no regulation that the state

4  department has implemented.  They're simply taking a position

5  in litigation and asking that that be given deference.

6    THE COURT:  Ms. Buchanan, the last point Ms. Ginsberg

7  made, I think, is a significant point.  Deference doesn't mean

8  that simply because you come into court and say "I don't want

9  to give up this document" that I'm supposed to say "OK."

10  Deference means there is an established interpretation

11  consistent with the interpretation that you want me to give in

12  some rule or regulation that the agency itself has

13  independently taken outside of the position of this lawsuit.

14    The easiest thing for me would be if you showed me

15  some rule, regulation or statute that said because it's in this

16  database, it's exempt.  I haven't seen it yet.  Do you have any

17  case that ever said that or any rule that was issued by the

18  agency that ever says that or anything related to the statute

19  or history, legislative history, that comes close to saying

20  that other than the position that Ms. Walters is taking as your

21  "expert" in this particular case?

22    MS. BUCHANAN:  Well, it has been the consistent

23  litigation position, and that is a relevant factor.

24    THE COURT:  So, in what case has that been the

25  consistent litigation position and the court has said, "Yes,

1    that is the law"?

2            MS. BUCHANAN:  Your Honor, all of the cases that we

3    cited -- and I recognize the cases we cited don't have the

4    exact fact pattern that we have here, but what the government

5    has said consistently in how it interprets this statute and its

6    visa database is that if the information is in the database, it

7    pertains to eligibility determinations.

8            THE COURT:  Where?  I didn't see that in any of your

9    cases.

10           MS. BUCHANAN:  It's in the declaration, and the

11   cases -- again, the cases --

12           THE COURT:  Well, you say that's been your consistent

13   position in every case, in every litigation, and then you cite

14   some cases for that proposition; but none of those cases are a

15   court affirming that position.

16           MS. BUCHANAN:  Respectfully, in those cases, in the

17   cases we cited, the court found, with the exception of *el*

18   *Badrawi* case and *Guerra* case, which we distinguished in our

19   papers, but all the other cases including the circuit cases --

20           THE COURT:  Found that because it was in this database

21   that it was exempt?

22           MS. BUCHANAN:  Yes.  Because it pertains to --

23           THE COURT:  Show me.  I didn't see that.  I didn't

24   even see that the way you argued it.  Cite me someplace in any

25   of your cases that says that a court has said that being in

C87QimmC

1    this database itself gives it exempt status.

2              MS. BUCHANAN:  I think that's the broad proposition of

3    those cases.

4              THE COURT:  That's fine.  Quote me that proposition.

5    If that proposition is in the case, I'd like to hear it because

6    I didn't get the impression that that articulated proposition

7    is in any one of those cases, but I haven't looked at all the

8    cases.  Even the way you describe it, you don't quote that

9    proposition out of any of those cases.

10             MS. BUCHANAN:  Your Honor, I think we did as close as

11   it can be --

12             THE COURT:  Tell me how close it comes.  Quote to me

13   what you want me to interpret as that proposition.

14             MS. BUCHANAN:  I'd have to go back to our papers.

15             THE COURT:  I didn't get the impression that there was

16   a case that said that we accept the government's position that

17   simply because it's in this database, and they call it a visa

18   database, that it is automatically exempt from production under

19   FOIA.

20             MS. GINSBERG:  Your Honor, I'm looking at the cases

21   cited by the defendant.  In each and every one of them, there

22   was an individualized determination that the document sought

23   and the document that the government was claiming were exempt

24   pertain to the issuance or refusal of a visa.  There were no

25   cases where they say because it's in the database and might

C87QimmC

1    some day pertain to the issuance or refusal of the visa, it's

2    exempt.  There *el Badrawi* case and *Guerra* case are cases that

3    the court said, no, these don't pertain to the issuance or

4    refusal of a visa.  I don't care where they came from, they are

5    not exempt because in the *el Badrawi* case it was because the

6    documents there pertain to the revocation of a visa.  And in

7    the *Guerra* case, it was because documents pertained to visa

8    waivers.

9        What the government has said in distinguishing those

10   cases is that those cases are looking too closely at the

11   language of the statute.  That's how we interpret statutes, we

12   look closely at the language of the statute.  The statute says

13   pertaining to the issuance or refusal of a visa.  This document

14   doesn't pertain.

15       THE COURT:  Ms. Buchanan, would it be your position

16   consistent with what you are arguing that if you had the

17   criminal record of an individual, and you decided to put that

18   criminal record into a file, and that criminal record was put

19   into this file, that would convert that criminal record into a

20   document that is exempt from production because it is in the

21   file, because it probably would make sense if sometime in the

22   future if that individual ever decided to apply for a visa,

23   that obviously someone would want to look and see if they had a

24   criminal record.  You're saying simply putting that criminal

25   record in the file would make that exempt?

1          MS. BUCHANAN:  Your Honor, it's always difficult to

2     answer the hypotheticals.

3          THE COURT:  Not on the principles you gave me, because

4     on the principle you gave me, that would be the answer.  If

5     that's not the answer, then I'm trying to figure out what

6     distinction you're drawing between that and this.  You're

7     saying automatically because it's in the file, no matter what

8     kind of document it is, it's exempt.  That's your position.

9          MS. BUCHANAN:  That's the general position, yes, your

10    Honor.

11         THE COURT:  As I say, I'm searching desperately for a

12    case that says that.

13         MS. BUCHANAN:  Your Honor, we've cited cases we think

14    support that.

15         THE COURT:  Tell me the case.  Tell me the case that

16    says that and read me the language that says that.

17         MS. BUCHANAN:  I'm citing from our letter brief, your

18    Honor, on page 3 where we list all the cases that have looked

19    at this specific exemption.

20         For example, in the *Judicial Watch* case, we quote, and

21    the language is in there:  "Prohibits disclosure of documents

22    retrieved from this visa database."

23         THE COURT:  From this visa, and they're talking about

24    this visa database?

25         MS. BUCHANAN:  Yes.

C87QimmC

1          THE COURT:  Give me the citation.

2          MS. BUCHANAN:  *Judicial Watch*, *Inc. v. U.S. Department*

3    *of State,* 650 F.Supp.2d, 28 at page 33.  It's a District of

4    D.C., 2009.

5          THE COURT:  That was a determination that it was

6    exempt solely because it was in the database?

7          MS. BUCHANAN:  Well, your Honor, I would acknowledge

8    that the cases deal with specific visa applications.  The visa

9    application comes from the database.

10          THE COURT:  I'm just trying to get the general

11    principle of law that you want me to pull out of that case.

12    Give me that citation one more time.

13          MS. BUCHANAN:  It's on page 3 of our letter brief,

14    *Judicial Watch Inc. v. U.S. Department of State*, 650 F.Supp.2d

15    28, 33.

16          MS. GINSBERG:  Your Honor, on that same page, what the

17    Court says is -- well, first of all, this was a request for

18    documents pertaining to the refusal of a specific visa.  Every

19    document probably responsive to that request is exempt under

20    220(f).

21          What the court said is they weren't just relying on a

22    description of the database there.  They required an individual

23    description of each document that the government was claiming

24    was exempt from disclosure.  So it wasn't like, oh, it came

25    from the database, end of story.  The declaration there

1    described each document and how it pertained to the refusal of

2    the visa, and all of those documents pertain to a specific

3    individual's visa refusal.  That is not the same as what the

4    government is claiming here, that they can withhold a document

5    that some day may be related to the issuance or refusal of the

6    issuance of a visa.

7              MS. BUCHANAN:  Your Honor, the focus here is on the

8    terms in the statute "pertaining to."

9              THE COURT:  Right.

10             MS. BUCHANAN:  And those words should be given broad

11   meaning, and the agency should be given deference in how they

12   construe those words with respect to their database.

13             THE COURT:  But every bit of information -- I would

14   assume that, almost without exception, any confrontation or

15   contact with an individual who doesn't have legal status in the

16   United States, that all information that is obtained by the

17   government would be relevant or pertain to the future issuance

18   of a visa, if that person ever applied for a visa.

19             MS. GINSBERG:  Your Honor, that's true just of

20   immigrants who don't have lawful status, that's true of many

21   other immigrants who do have lawful status but who apply for

22   some visa later.  So, that's a huge swathe of documents

23   pertaining to numerous people in this country who are

24   immigrants here either lawfully or not.

25             THE COURT:  Ms. Buchanan, I think this is an important

1    issue.  Quite frankly, I am not particularly interested in just

2    weighing in on this or being the first Judge to simply say one

3    way or the other, you know, all of these things are exempt, no,

4    you know, these things aren't -- they aren't exempt.

5         As I say, my attitude still a little bit "it depends."

6    And I think the intent of the statute even as passed by

7    Congress would be, look, FOIA's purpose is to make sure that --

8    particularly one of its purposes, if you have officials of the

9    government who would want to hide information, that they can't

10   simply hide information based on a blanket assertion that they

11   don't want the public to know this information.

12        So there's got to be some rational basis to guide them

13   and the state department and the courts in terms of what kind

14   of information is produced and what kind of information is not

15   produced.

16        I am hesitant to say that given the purpose of FOIA,

17   that it is simply left to the discretion of the individual

18   bureaucrat as to what file they want to put the documents in

19   that determines whether or not those documents are of public

20   interest or not of public interest.

21        If that were the case, then FOIA would be completely

22   stripped of any power to force the government to disclose

23   things that they should be disclosing simply by your putting

24   everything in a file labeled top secret confidential visas.  I

25   can't imagine that that's the intent of the statute, to give

1 the government the power to do that.  You know, it gives the

2 government the power to withhold certain types of information

3 that the government uses for certain purposes.

4         I think the thing that troubles me the most is not

5 your assertion that I should give some deference to the fact

6 that it is in the file, but the additional consideration if you

7 want me to add to this protection by saying, even though it was

8 not put into a file related to any visa application or

9 consideration of any visa application or ever used to consider

10 any visa application, that somehow it has visa application

11 protection because sometime in the future somebody might apply

12 for a visa, and, therefore, that's an automatic exemption from

13 having to produce any of the documents because you put it in

14 that file.

15         That's the part that troubles me the most; that I

16 can't imagine that any court has said just because it might be

17 used, it might be used at some future date if someone ever

18 applies for a visa, and, so, therefore, they put it in a file

19 called visa file, that that necessarily exempts it from any

20 disclosure.

21         If that were the case, any information about any

22 non-citizen could be put in this file.  Your argument is, if

23 they weren't want to disclose it, all they have to do is put it

24 in this file.  I can't imagine that that's really the intent of

25 the rule or even the state department's intent to have the rule

1    interpreted that way.

2         MS. GINSBERG:  Courts looking at that intent, your

3    Honor, have said that this statute, the purpose of it, is not

4    to reveal the thought processes of those adjudicating visas.

5    So these documents that don't pertain to any actual visa aren't

6    going to reveal anybody's thought processes.

7         THE COURT:  In *Judicial Watch*, what page were you

8    quoting from?

9         MS. BUCHANAN:  33.

10        (Pause)

11        THE COURT:  I am going to look at it more carefully,

12   but the language with regard to whether the state department

13   properly considered whether portions of the document are not

14   exempt and could be disclosed and the government's obligation

15   to reasonably segregate disclosed all non-exempt material

16   unless the material is inextricably intertwined with exempt

17   portions, I'm not sure that you've gone through that processes

18   because it seems to me the only argument you're making is that

19   none of this pertains to any particular visa application, and

20   that your inquiry stops simply because it's in the file.

21        I am not sure I understand -- and that's why I

22   discussed earlier, I'm not sure I understand what's the basis

23   for your segregatable and non-segregatable argument if none of

24   the document pertains to an application for a visa.

25        MS. BUCHANAN:  Your Honor, the position is the

1   database is used for visa applications in --

2           THE COURT:  Even *Judicial Watch* doesn't say that's

3   good enough.

4           MS. BUCHANAN:  Your Honor, if you would like, I can

5   consult with my client and have a supplemental submission.

6           THE COURT:  Don't you agree -- I assume that's why you

7   put that in the affidavit, you agree that the government has an

8   obligation to reasonably segregate and disclose all non-exempt

9   materials unless material is inextricably intertwined with

10  exempt portions.

11          MS. BUCHANAN:  But the point here is in this case, it

12  is inextricably intertwined because it comes from the database

13  that is used for visa --

14          THE COURT:  But that was true in this case, and the

15  court still said you had the independent obligation --

16          MS. BUCHANAN:  The court concluded it had met it

17  because it came from the visa database documents are exempt

18  from--

19          THE COURT:  No, that's not what it says.  It said it

20  met it because the state department complied with its

21  obligation, here having found that the documents may not be

22  segregated and released, because the records all pertain in

23  their entirety to visa issuance and refusal.  That was the

24  basis of affirming its segregatable portion.  It doesn't say

25  simply because it was in the file.

1          It says they looked at the document and made a

2     determination; that all these documents were generated in

3     relationship to a visa application.  That was what the court's

4     analysis was.  The court would not even have had to make this

5     statement if, as you say, it's good enough to simply say it's

6     in the file.  The court didn't say that.  The court said just

7     the opposite.  We find that it's in the file, now we have to

8     determine whether it's segregatable.

9          You're arguing the opposite; that once I determine

10    it's in the file, you have no obligation to make any specific

11    assessment of whether it is segregatable.  That automatically

12    makes it exempt, whether it's segregatable or not.  That's your

13    position.  Right?

14         MS. BUCHANAN:  Yes.

15         THE COURT:  That's not what this case says.

16         MS. BUCHANAN:  Well, respectfully, your Honor, we

17    might disagree about how to construe this portion of the

18    decision.

19         THE COURT:  Well, you would disagree that the court

20    said you had an independent obligation to reasonably segregate

21    and disclose all the non-exempt material, and that was after it

22    determined that it was in the file?

23         MS. BUCHANAN:  That's a general FOIA proposition.

24         THE COURT:  Right.

25         MS. BUCHANAN:  But when applying it to this specific

1 exemption and this specific document and the purpose of it

2 being confidential, the segregability analysis doesn't really

3 apply.

4          THE COURT:  That's not what this court says.  It says

5 it does apply.  You're saying you disagree with that

6 proposition.  It clearly says that you have to even, though we

7 say it may be exempt because it was a visa application, and

8 it's in a visa file, you still have to look at it and see if

9 it's segregatable.  That makes common sense, doesn't it?

10 That's what the Court said.  It didn't say what you just said.

11 You don't think that's what the court is saying there?

12          MS. BUCHANAN:  Respectfully, no.

13          THE COURT:  So why have this discussion at all?

14          MS. BUCHANAN:  Because it's walking through the

15 general FOIA elements and when it applied this element, general

16 FOIA element to this specific exemption and this specific

17 statute 220(f) and how it pertains to visas, it concludes that

18 it's satisfied by the fact that it comes from this visa

19 database.

20          THE COURT:  Where does it say that?

21          MS. BUCHANAN:  The last sentence: "As a result the

22 entire contents of the five visa database documents are exempt

23 from disclosure."

24          THE COURT:  That's because the state department

25 complied with its additional obligation to determine whether or

1  not anything was segregatable from the visa application; and

2  because the court found that they did do that, then all the

3  documents pertaining to the visa application wasn't

4  segregatable.

5      MS. BUCHANAN:  They stated it in their declaration in

6  that case, and we've stated it here.

7      MS. GINSBERG:  In the declaration in the *Judicial*

8  *Watch* case, they went through each document.  And with respect

9  to each, they said it pertained to a particular person's visa.

10     And I think we're getting away from that aspect of

11  this case, which is that there is no visa.  In *Judicial Watch*,

12  had there been no visa, had the entire request not been about a

13  visa, they wouldn't have gotten to segregability.

14     But they got to segregability because they found that

15  they pertained to a visa, and then they said, OK, is there any

16  reasonably segregable information?  But before they even did

17  that, it was did it pertain to a visa.  And it did there.  That

18  was the only thing that the plaintiff in *Judicial Watch* was

19  even asking about, was an individual's visa.

20     THE COURT:  I want to look at the cases more carefully

21  this weekend because I think the proposition that you are

22  asking me to accept is a little broader than the proposition as

23  I am aware it would read in these cases.  I am hesitant --

24  unless I am compelled to do so, I am hesitant to simply say

25  just because you stick it in a file and stamp "visa" on it,

C87QimmC

1    that that automatically ends the government's requirements in

2    terms of assessment of whether or not it is exempt, not exempt,

3    whether or not it is fully exempt or not exempt, even though

4    it's never been used for any visa application or revocation or

5    denial or granting a visa. It's just never been used. I think

6    that that is a broader proposition that may be consistent with

7    all the other cases, and you may convince me of that, but it's

8    clearly broader proposition than any other proposition that

9    I've seen in this case.

10           I'm hesitant to simply say, you know, stamp something

11   top secret, and, therefore, you don't have to produce it.

12   That's basically the whole purpose of FOIA; you can't do that

13   any more. You can't just stamp it visa and say because I

14   stamped it visa, I get to withhold it even though it has

15   nothing to do with assessment of anybody's visa. I am troubled

16   by that concept.

17           So, I will give you a quick opportunity -- let me look

18   at the cases. I'll give you a quick opportunity if you want to

19   get me in the next week, ten days, a further letter with regard

20   to that, that's fine. Then you will have a week, ten days to

21   respond if the plaintiff wants to respond. If you don't,

22   that's fine, because I'm going to move forward anyway.

23           MS. BUCHANAN: Respectfully, your Honor, could we just

24   get a little bit more time? What I would like to do is get a

25   copy of the transcript and have the department of state have an

1  opportunity to review that.

2          THE COURT:  Sure.

3          MS. BUCHANAN:  And, thereafter, have supplemental

4  submissions if that would help the, court.

5          THE COURT:  Well, this I also what I -- you know what,

6  why don't you give you another day to come in by that date and

7  maybe I can issue a written opinion by that day.  Otherwise, I

8  will have everthing you give me and I can deal with the issue

9  when I see you.

10          Why don't I say like the end of September.  It will

11  give you both time to if you want to make further argument.

12  But you see where my concerns are.  I am not saying that the

13  government isn't entitled to as broad a protection as you're

14  offering, but I think it's pushing the envelope a little bit in

15  terms of the other cases that I've seen.  As I said, I hate to

16  characterize it that way, but I am hesitant to have you stamp

17  something top secret and say that that's why it's exempt,

18  simply because it's designated that way or put in a top secret

19  file.

20          So, you know, if you can convince me that simply

21  because it's in the database even though it was never

22  generated, never considered, never utilized, in assessing a

23  visa application, maybe I can accept that, but I won't accept

24  that without some more specific authority that convinces me

25  that that is appropriate quoted reason in law that that is as

1 broad a proposition that the government can stand behind in

2 terms of them not complying with the FOIA.

3 Why don't you think about it in those terms, both of

4 you.  Do you want me to give you this back?

5 MS. BUCHANAN:  We can submit it to the Court under

6 seal.

7 THE COURT:  All right.  It's sealed.  But it gives me

8 a nature of the idea and the context.  As I say, I think you're

9 right, I think in a practical sense, it is probably much ado

10 about the substance, if not much, given the way you've

11 described it in your papers, but I understand you don't want to

12 open the flood gates and everybody now thinking they can get

13 everything simply out of the visa file.

14 But, frankly, I'm not particularly -- I don't know

15 anything about the case, but I'm not completely convinced that

16 there is anything that you're looking for that's useful to you,

17 but that's not for me to assess.  You know best what this case

18 is about and what you want to do with it.

19 So, let me do that.  Did I give you a date?

20 MS. GINSBERG:  No, your Honor.

21 THE COURT:  Let's say September 25; Tuesday,

22 September 25.

23 MS. BUCHANAN:  Your Honor, could we do it -- is it

24 possible we could do it in mid October?

25 THE COURT:  The 17th?

1          MS. BUCHANAN:  That would be good.

2          THE COURT:  October 17.  If you are going to submit

3     something, do it in at least the next 30 days so I can read it.

4     But I am going to go forward and review all the cases to give

5     myself an idea of where I think I will be going unless you

6     convince me otherwise.

7          So let's see if we can resolve it by the 17th of

8     October.

9          MS. BUCHANAN:  Your Honor, on one other topic of

10    scheduling, there seemed to be some confusion.  The parties

11    appeared before your Honor on June 5, and that's when we

12    entered into this scheduling order that we're under now for

13    summary judgment motion, but just prior to that on, June 1, the

14    Court entered the case management plan that the parties had

15    worked out, but it seems like that case management plan has

16    sort of been mooted.

17         THE COURT:  I am not even sure what you need to do.

18    Is there anything to do?

19         MS. BUCHANAN:  It's moot.

20         THE COURT:  This case is over when I make this

21    decision one way or the other, isn't it?

22         MS. BUCHANAN:  Right.  I'm just making the point that

23    the case management plan that was ordered is moot.

24         THE COURT:  I will suspend it unless there's something

25    somebody thinks needs to be done, but this whole case is about

C87QimmC

1  whether you produce this one document or not produce this one

2  document.  So let's get it all done and I'll resolve it all by

3  the 17th.

4          MS. GINSBERG:  Thank you, your Honor.

5          MS. BUCHANAN:  Thank you.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25